IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MOON RIVER FOODS, INC.                    PLAINTIFF/COUNTERDEFENDANT

v.                                        CIVIL ACTION NO. 4:23-cv-189-SA-DAS

RED CHAMBER CO.                           DEFENDANT/COUNTERPLAINTIFF

ORDER AND MEMORANDUM OPINION

On August 16, 2023, Moon River Foods, Inc. ("Moon River") initiated this civil action by filing its Complaint [2] against Red Chamber Co. ("Red Chamber") in the Circuit Court of Sunflower County, Mississippi. Red Chamber removed the case to this Court on October 16, 2023, premising jurisdiction on diversity of citizenship.

Subsequently, on July 1, 2025, Moon River filed its First Amended Complaint [79], which is now the operative complaint. The First Amended Complaint [79] brings a state law conversion claim against Red Chamber. Thereafter, Red Chamber filed its Answer and Counterclaim [81] wherein it asserted two counterclaims against Moon River.

Before the Court are the parties' competing motions for summary judgment. *See generally* [105, 109]. The Motions [105, 109] have been fully briefed and are now ripe for review. The Court is prepared to rule.

*Relevant Background*

This case involves a business dispute between Moon River and Red Chamber. Moon River is in the business of processing and shipping Asian carp from its facility located in Indianola, Mississippi. It is a Mississippi corporation whose capital stock is owned by Shanghai Shenran Trade Co., Ltd. ("Shanghai Shenran")—a Chinese limited liability company and nonparty to this lawsuit. Red Chamber is headquartered in Vernon, California and is one of the nation's largest

seafood importing, exporting, and processing companies. Red Chamber owns various facilities located in the United States, as well as in other countries such as Argentina.

In early 2019, Xiao "Hank" Zhu ("Hank"), principal shareholder and general manager of Shanghai Shenran, met with Ming Bin Kou ("Ming Bin"), CEO of Red Chamber, to discuss certain surimi production equipment located at Moon River's Mississippi facility. The surimi production equipment is a corporate asset of Moon River and was, according to Hank's deposition testimony, custom built.[1] It is comprised of a line-based machine that processes raw fish to produce a surimi paste that is widely used in the food industry. At that time, Moon River was not using the equipment due to its inability to obtain the quantity of raw fish needed to operate the machine.

In November 2019, Ming Bin travelled to Moon River's facility in Mississippi to see the surimi production equipment in person and expressed Red Chamber's interest in purchasing the equipment. From that time until 2022, Hank and Ming Bin remained in communication about the equipment, as well as other business prospects. Though the discussions between Hank and Ming Bin initially surrounded Red Chamber's interest in the surimi equipment, the two later engaged in negotiations pertaining to Red Chamber's potential purchase of Moon River's outstanding capital stock.

In the spring of 2022, while negotiations were ongoing, Moon River permitted Red Chamber to take possession of the surimi production equipment. Red Chamber arranged and paid for the disassembly of the equipment and its subsequent shipment to Argentina. For context, that process began in September 2021 and the equipment was completely removed from Moon River's Mississippi facility in April 2022, with the exception of one component. *See* [122], Ex. 1 at p. 2.[2]

---

[1] A valuation report prepared by one of Red Chamber's designated expert purports the fair market value of the surimi production equipment to be over one million dollars. *See generally* [122], Ex. 12.
[2] The piece of equipment, which formed part of the surimi line, that was not relocated is called the "decanter" and is a key component of the surimi production line. It remains at Moon River's facility.

In exchange for taking possession of the equipment at that time, Red Chamber paid Moon River $180,000. According to Hank, the $180,000 payment was compensation for disruption to Moon River's Asian carp processing operation during the time the surimi equipment was being disassembled. At his deposition, Ming Bin, on behalf of Red Chamber, conceded that Red Chamber has not paid Moon River any sum for the purchase of the surimi production equipment. *See* [122], Ex. 4 at p. 10.

Additionally, while the surimi production equipment was being disassembled, Red Chamber moved some of its shrimp peeling equipment to Moon River's Mississippi facility. Adding a shrimp peeling operation to Moon River was one of the business prospects Hank and Ming Bin had discussed. At her deposition, Shuhong "Claire" Qi ("Claire"), the CEO of Moon River, stated that Moon River "[was] guaranteed the surimi equipment investment [was] going to be compensated[,]" and that is why Moon River allowed Red Chamber to take possession of the surimi equipment and install the shrimp peeler machines at Moon River's facility. [109], Ex. 2 at p. 9.[3] Thereafter, in 2022, Hank directed his attorney to prepare a draft of a stock purchase agreement. At his deposition, Hank testified that the draft of the agreement encompassed the terms "based on a mutual understanding" of his and Ming Bin's previous discussions. *Id.*, Ex. 3 at p. 21. However, Ming Bin disagreed and the agreement was not executed by either party. For his part, Ming Bin testified that the terms of his and Hank's "mutual understanding" for Red Chamber's acquisition of Moon River's stock were not accurately reflected in the proposed draft. [125], Ex. 3 at p. 2. The parties then engaged in communications in an attempt to reach a resolution to no avail.

---

[3] This case does not involve any dispute over the shrimp peeler machines. During the pendency of this litigation, Red Chamber retrieved its shrimp peeler machines from Moon River's facility.

In early 2023, counsel for the parties engaged in communications in an attempt to resolve the dispute surrounding the failed negotiations regarding the stock purchase and Red Chamber's possession of the surimi equipment but were unsuccessful. On June 8, 2023, Moon River, through counsel, demanded the return of the surimi production equipment from Red Chamber, and requested, alternatively, if the equipment was not returned, that Red Chamber pay for the equipment. Neither act occurred and this lawsuit followed. As to the surimi equipment, it remains at Red Chamber's facility in Puerto Madryn, Chubut, Argentina.

Moon River brings a claim for conversion against Red Chamber relative to the surimi production equipment. Red Chamber asserts counterclaims for breach of contract and promissory estoppel, alleging that a contract existed between the parties and that Moon River breached it. Through their respective Motions [105, 109], the parties seek dismissal of each other's claims. Both Motions [105, 109] are opposed.

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex*, 477 U.S. at 323, 106 S. Ct.

2548). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

The Court will first consider Moon River's Motion for Summary Judgment [105] before turning to Red Chamber's Motion for Summary Judgment [109].

I.    *Moon River's Motion for Summary Judgment [105]*

Red Chamber asserts two counterclaims in its Answer and Counterclaim [81]—breach of contract and promissory estoppel. Moon River seeks dismissal of both counterclaims, which the Court will address in turn.

A.   *Breach of Contract*

The Court notes that Mississippi law applies because this action is before the Court on the basis of diversity jurisdiction. *See, e.g., Klocke v. Watson*, 936 F.3d 240, 244 (5th Cir. 2019) (citing *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965)) ("The *Erie* line of authorities holds that substantive state law must be applied in federal courts in diversity cases[.]"). In Mississippi, "[a] breach-of-contract [claim] has two elements: (1) 'the existence of a valid

5

binding contract,' and (2) a showing 'that the defendant has broken, or breached it.'" *Maness v. K & A Enter. of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018) (quoting *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224 (Miss. 2012)).

As to the first element, Moon River argues that a valid binding contract never existed between it and Red Chamber and therefore this counterclaim against it fails. At the outset, the Court attempts to discern the basis for Red Chamber's contractual claim, including specifically identifying the alleged contract upon which this counterclaim is based. The Court first looks to Red Chamber's allegations in its Answer and Counterclaim [81]. There, Red Chamber alleges that "Moon River and Red Chamber agreed to enter into a contract for the acquisition of all assets, less the agreed exclusions, of Moon River. This included, without limitation, Moon River's real property and surimi equipment." [81] at p. 9. Based on this allegation, Red Chamber's theory for its breach of contract claim, at least at the time of the filing of its Answer and Counterclaim [81], involved only an alleged agreement for the acquisition of assets from Moon River. However, in its Response Memorandum [126], submitted in opposition to Moon River's Motion [105], Red Chamber alleges that "Red Chamber filed a counterclaim [ECF 81], based on breach of contract and promissory estoppel due to Moon River failing to complete *the stock purchase agreement* that had been verbally agreed upon." [126] at p. 2 (emphasis added). It appears, based on this argument, that the theory for Red Chamber's breach of contract claim has shifted and is now predicated on a contract which allegedly included terms for the purchase of Moon River's stock. Against this backdrop, the Court reverts to its analysis of the first element of Red Chamber's breach of contract claim.

It is undisputed that no written contract existed between the parties as the only draft of a stock purchase agreement was not executed by either of them. As noted, Red Chamber contends

that the parties entered into a verbal contract. Specifically, Red Chamber argues that "Ming Bin and Hank verbally agreed to the material terms." [126] at p. 2.

"In general, an oral contract is enforceable if it satisfies all the legal requirements for a contract." *Howard, Tr. of William Eugene Howard, Jr. Tr. v. Nelson*, 394 So. 3d 1036, 1038 (Miss. Ct. App. 2024) (citing *Ladner v. Manuel*, 744 So. 2d 390, 392 (Miss. Ct. App. 1999)). "The elements of a contract are (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 734 (Miss. 2019) (quoting *GGNSC Batesville, LLC v. Johnson*, 109 So. 3d 562, 565 (Miss. 2013)) (internal quotation marks omitted).

Moon River's primary argument for dismissal of this claim pertains to the fourth element. It argues that Moon River lacked legal capacity to enter into a contract involving the sale of its stock because it does not own its stock and therefore no contract existed between it and Red Chamber. In addition to arguing that a valid contract did not exist between the parties, Moon River argues that Red Chamber countersued the wrong party. The Court agrees.

In its Response Memorandum [126], Red Chamber makes clear that the sale and transfer of Moon River's stock was a material term of the alleged oral contract upon which its claim is based. *See* [126] at p. 9. However, as Moon River points out, it is undisputed that a separate legal entity, Shanghai Shenran, owns Moon River's stock. *See* [105], Ex. 2 at p. 1.[4] Recognizing the issue presented by this undisputed fact, Red Chamber raises a narrow argument pertaining to shareholder liability. It argues that "Moon River and Shanghai Shenran are alters [sic] egos of each

---

[4] And, as the Court noted above, Shanghai Shenran is *not* a party to this lawsuit.

other, therefore there is no legal distinction [that] exists between the corporation and the shareholder." [126] at p. 5. This argument is a non-starter

"In Mississippi, 'a corporation is a separate, distinct entity from its stockholders.'" *Daniels v. Crocker*, 235 So. 3d 1, 17 (Miss. 2017) (quoting *Durham v. Univ. of Miss.*, 966 So. 2d 832, 835 (Miss. Ct. App. 2007)). "'[A]lter ego' is not a substantive claim but merely a procedural argument that, if successful, allows a plaintiff to *pierce the corporate veil* and recover from a corporation's *shareholders*." *EDW Invs., LLC v. Barnett*, 149 So. 3d 489, 492 (Miss. 2014) (emphasis added). This theory of liability does not apply to the litigant in this case, Moon River (a non-shareholder of its corporate stock), and is wholly irrelevant to the elements of Red Chamber's breach of contract claim. The Court rejects Red Chamber's argument in that regard.

Aside from attempting to proceed based on a flawed interpretation of shareholder liability, Red Chamber fails to provide any evidence that demonstrates that Moon River, a *separate entity* from its stockholder, had the legal capacity to enter into any contract with Red Chamber for the sale of its stock. And, again, it is Red Chamber's position that the stock sale was a material term of the alleged oral contract. Absent proof that Moon River had the legal capacity to enter into a contract for the sale of its stock, Red Chamber cannot show the existence of a question of fact as to an essential element of a valid contract. *See Gulf Coast Hospice LLC*, 273 So. 3d at 736 ("While the potential existence of an oral contract might present a fact issue, unless the party challenging summary judgment produces sufficient evidence demonstrating that a disputed material fact exists, summary judgment remains proper."). Accordingly, its claim for breach of contract against Moon River fails for this reason alone. *Cook v. Wallot*, 172 So. 3d 788, 801 (Miss. Ct. App. 2013) ("Without a valid contract, no set of facts can support a claim for breach of contract."); *see also*

*Mississippi Dep't of Env't Quality v. Pac. Chlorine, Inc.*, 100 So. 3d 432, 439 (Miss. 2012) ("[N]o breach-of-contract claim exists where no contract is created.").[5]

Additionally, the Court notes that, in its Response Memorandum [126], Red Chamber also fails to address the remaining elements of a valid contract pursuant to Mississippi law. For example, Moon River argues that there is no evidence that consideration was exchanged between it and Red Chamber that would support a valid contract for the stock. Valid consideration in support of a contract may be in the form of "a benefit to the promisor or a detriment to the promisee." *Cascio v. Cascio Invs.*, LLC, 327 So. 3d 59, 69 (Miss. 2021). Red Chamber generally argues that its relocation of the surimi equipment is "evidence of more than mere 'preliminary' negotiation between the two entities." [126] at p. 9. However, it does not explicitly argue that such conduct was detrimental to it nor that the conduct constituted consideration for the alleged stock agreement. Red Chamber could be deemed to have simply abandoned its opposition to Moon River's request for dismissal on that basis. *See McMahan v. U.S. Bank Nat'l Ass'n*, 2024 WL 2243301, at *17 (S.D. Tex. Apr. 11, 2024) (explaining that an argument that is not sufficiently briefed is waived).

Nonetheless, even considering Red Chamber's argument that its relocation of the surimi equipment is evidence of more than mere negotiations, that element of a valid contract is not met here. To the extent relevant, it is undisputed in this case that Red Chamber alone bore the costs of relocating the surimi equipment to Argentina. However, that conduct occurred *prior* to any alleged stock agreement according to Red Chamber's *own* contentions. Red Chamber argues that "there was a meeting of the minds in or about April 2022…" between Hank and Ming Bin for the alleged

---

[5] It is noteworthy to point out that Red Chamber does not argue in its Response Memorandum [126] that any contract existed solely for the surimi equipment independent of the alleged stock purchase contract. Thus, the Court sees no need to address a nonissue.

stock purchase. [126] at p. 9. Yet, it is also undisputed that Red Chamber began relocating the equipment months before in September of 2021. *See* [109], Ex. 2 at p. 6; [122], Ex. 1 at p. 2. This fact is critical. Simply put, the relocation of the surimi equipment could not have been consideration for an alleged agreement not yet assented to. Red Chamber raises only conclusory arguments that "some agreement and/or contract" existed between the parties, which is insufficient to overcome summary judgment. *See Nabors*, 2019 WL 2617240 at *1. For these additional reasons, Red Chamber's breach of contract claim is due to be dismissed.

Even assuming *arguendo* that the first prong of Red Chamber's breach of contract claim was met, the outcome would remain unchanged. The Court notes that Red Chamber provides no argument as to how Moon River breached the purported stock agreement, which is an element of its breach of contract claim. *See Maness*, 250 So. 3d at 414. Additionally, during his deposition, Ming Bin (the CEO of Red Chamber) testified that the alleged breach occurred when Moon River filed this litigation against it:

> Q.   On what date do you contend that this agreement attested to
>       in Red Chamber's interrogatory responses was breached?
>
> A.   Breached?
>
> Q.   Yeah, broken.
>
> A.   I have no idea.
>
> Q.   Well, do you contend that it was breached or –
>
> A.   When we get a lawsuit, that's, I guess, when it was breached.

[105], Ex. 4 at p. 15.

The Court notes that Red Chamber does not contend that the parties agreed to refrain from filing suit against each other as part of their purported agreement. Ultimately, based on this testimony and in the absence of any argument as to breach, it is unclear to the Court how or when

Red Chamber contends any alleged agreement was breached by Moon River. The Court finds this claim is subject to dismissal for this reason as well.

### B. Promissory Estoppel

The Court next addresses Red Chamber's promissory estoppel counterclaim. The elements of promissory estoppel in Mississippi are: "(1) the making of a promise, even though without consideration, (2) the intention that the promise be relied upon and in fact is relied upon, and (3) a refusal to enforce it would virtually sanction the perpetuation of fraud or would result in other injustice." *Beasley v. Sutton*, 192 So. 3d 325, 335 (Miss. Ct. App. 2015) (citing *Thompson v. First Am. Nat'l Bank*, 19 So.3d 784, 788 (Miss. Ct. App. 2009)). "Promissory estoppel differs from ordinary equitable estoppel in that the representation is promissory rather than as to an existing fact." *Gulf Coast Hospice LLC*, 273 So. 3d at 741.

As to this claim, Moon River argues that there is no evidence of a promise made on Moon River's part upon which Red Chamber relied. In its Response Memorandum [126], Red Chamber argues that it relied on Moon River's "promise of [Red Chamber's] future ownership of the stock" when it incurred expenses to relocate the surimi production equipment to Argentina. [126] at p. 10. Notably, in the same paragraph, Red Chamber provides another argument that is contradictory to its position stating:

> The facts demonstrate that *at the time* Red Chamber was given possession of the surimi equipment by Moon River, transported and install[ed] shrimp peeling machines in Moon River's Mississippi facility, there were *ongoing negotiations* regarding the purchase of Moon River's outstanding stock, including a purchase agreement drafted by counsel for Moon River.

*Id.* (emphasis added).

In other words, Red Chamber seemingly concedes that there were ongoing negotiations pertaining to its potential purchase of Moon River's stock, which does not amount to a *promise* to

11

sell or transfer said stock. Red Chamber argues that "[e]vidence exists to show that Red Chamber believed Moon River was the owner of the outstanding stock, and that Moon River was with whom they were negotiating." *Id.* This argument misses the mark, however, as it does not relate to a *promise* to sell the stock on the part of Moon River if Red Chamber relocated the surimi equipment. Additionally, Claire, the CEO of Moon River, attests in her sworn declaration that Moon River allowed Red Chamber to take possession of the surimi equipment on the condition that it be compensated for the value of the equipment. *See* [122], Ex. 1 at p. 1. Simply stated, Red Chamber provides no evidence that creates a question of fact as to whether Moon River made a promise to Red Chamber upon which Red Chamber relied when it moved the equipment to Argentina. This claim is due to be dismissed. *See Beasley*, 192 So. 3d at 335 (affirming the grant of summary judgment in favor of the defendant on plaintiff's promissory estoppel claim where plaintiff failed to provide evidence that defendant "ever made an explicit promise" that would support her claim.).

Out of an abundance of caution, the Court notes that Red Chamber passingly argues that a jury question exists as to "whether Red Chamber and Moon River formed an enforceable contract through words, actions, and performance on which Red Chamber relied to its detriment[.]" [126] at p. 11. This argument is raised as related to its promissory estoppel claim. *See id.* Though not explicitly alleged, it appears that Red Chamber could be attempting to assert a claim of equitable estoppel. However, the Court notes that the doctrine of equitable estoppel differs from promissory estoppel. *See Gulf Coast Hospice LLC*, 273 So. 3d at 741 (explaining that ordinary equitable estoppel differs from promissory estoppel and outlining the essential elements of equitable estoppel, which include a party's reliance on "[c]onduct and acts, language or silence, amounting to a representation…. of material facts [made]…" as opposed to reliance on an explicit promise.). And, because Red Chamber did not plead a counterclaim of equitable estoppel in its Answer [81],

the Court need not address this argument. *See Amedee v. Shell Chem. LP-Geismer Plant*, 384 F. Supp. 3d 613, 638 (M.D. La. 2019) ("The law is well-settled that a plaintiff may not rely on new claims raised for the first time in response to a motion for summary judgment.").

II.   *Red Chamber's Motion for Summary Judgment [109]*

The Court now turns to Red Chamber's Motion for Summary Judgment [109]. Through its Motion [109], Red Chamber seeks dismissal of Moon River's sole conversion claim. It also requests, in the event Moon River's claim is not dismissed, that the Court grant it partial summary judgment on a specific portion of the damages Moon River seeks. The Court will first address the merits of the conversion claim.

A. *Conversion*

Again, the subject of Moon River's conversion claim is the surimi production equipment, which is currently in Red Chamber's possession in Argentina. Pursuant to Mississippi law, "… ownership is an essential element of conversion." *4-Way Elec. Servs., LLC v. Huntcole, LLC*, 366 So. 3d 844, 850 (Miss. 2023) (quoting *Cmty. Bank, Ellisville, Miss. v. Courtney*, 884 So. 2d 767, 773 (Miss. 2004)) (internal quotation marks omitted). In addition, a conversion claim requires "proof of a wrongful possession, *or* the exercise of a dominion in exclusion or defiance of the owner's right, *or* of an unauthorized and injurious use, *or* of a wrongful detention after demand." *Covington Cnty. Bank v. Magee*, 177 So. 3d 826, 829 (Miss. 2015) (internal quotation marks and citations omitted; emphasis added).

In its supporting Memorandum [110], Red Chamber concedes that the surimi production equipment is owned by Moon River. *See* [110] at p. 6 (stating that it is not in wrongful possession of "*Moon River's* surimi equipment.") (emphasis added). Thus, the Court moves on to address the parties' arguments pertaining to Moon River's basis for the claim.

13

Red Chamber raises three arguments in favor of dismissal of Moon River's conversion claim. First, it argues that there is no proof that it is in wrongful possession of the surimi production equipment as Moon River permitted it to take possession. Second, it argues that it has provided Moon River with the opportunity to retrieve the equipment, which negates any exercise of dominion or wrongful detention of the equipment on its part. Third, Red Chamber argues that it has not used the equipment since the same arrived in Argentina, and therefore it has not converted the equipment through unauthorized or injurious use. In response, Moon River does not contest that it voluntarily allowed Red Chamber to take possession of the equipment, and it does not base its claim on any use of the equipment by Red Chamber. Thus, the Court will only address Red Chamber's second argument.

Red Chamber denies having had any intent to deprive Moon River of the equipment located in Argentina. Specifically, it argues that "Moon River has always had the opportunity to retrieve its surimi machine…at its own cost." [110] at p. 8. For its part, Moon River argues that Red Chamber "exercised dominion and control over the equipment under a false claim of ownership" and failed to return the equipment after demand for its return was made. [123] at p. 26.

The Mississippi Supreme Court has held that "there is no conversion until the title of the lawful owner is made known and resisted or the [defendant] exercises dominion over the property by use, sale, or otherwise." *Covington Cnty. Bank*, 177 So. 3d at 829 (quoting *Cmty. Bank*, 884 So. 2d at 773) (internal quotation marks omitted). Moon River argues that it demanded that Red Chamber return the surimi equipment through attorney communications. On June 8, 2023, Moon River's attorney sent a letter to Red Chamber's then-counsel, Gregory J. Morrow, titled "Notice of Claim and Demand." [122], Ex. 5 at p. 12. The letter states in pertinent part:

> In short, the proposal for a buy-sell of Moon River's stock is no
> longer on the table. Despite that, Red Chamber remains in

> possession and control of Moon River's surimi equipment, presumably at its facility in Argentina.
>
> …
>
> Red Chamber is in wrongful possession of the surimi equipment in defiance of Moon River's rights and is wrongfully detaining the equipment after Moon River's demand that it be returned or purchased for $1,487,621.00. On behalf of Moon River, demand is hereby reiterated that Red Chamber immediately take action to return the surimi equipment in the same state and condition in which it was in at the time it was removed, including having the equipment assembled, inspected, and any necessary repairs made.

*Id.* at p. 13.

On June 17, 2023, Red Chamber's then-attorney acknowledged having received the June 8, 2023 demand letter. *See* [122], Ex. 5 at p. 20. Despite that acknowledgment, in its Reply [130], Red Chamber argues that "[t]he only demand Moon River has made was unreasonable and designed to force Red Chamber to pay the cost of having [the surimi equipment] shipped back to Mississippi after it has paid all costs to have it transported to Argentina." [130] at p. 4. Red Chamber does not address the June 8, 2023 letter and instead cites an earlier letter from Moon River dated March 7, 2023 in support of its argument.

In the March 7, 2023 letter, addressed to Ming Bin directly, Moon River proposed three options for potential resolution of the parties' dispute surrounding their failed negotiations. Though not an explicit demand, the letter provided an option for the return of the surimi equipment.

> Option #3: (A) Red Chamber, at its expense, can retrieve its shrimp processing equipment from Moon River's facility; (B) Red Chamber, at its expense, will return the surimi line equipment from Argentina to Moon River's facility in Mississippi; (C) Red Chamber, at its expense, will reassemble the entire surimi line equipment at Moon River's facility; and (D) Red Chamber will pay the expense of having the manufacturer of the surimi equipment, Sound Ocean, inspect and test the surimi equipment upon reassembly and to make any repairs to the equipment which Sound Ocean deems necessary.

*Id.*, Ex. 4 at p. 3.

In its Reply [130], Red Chamber contends that the March 7, 2023 letter "was the *only* time Moon River had requested the return of the surimi equipment. [130] at p. 3 (emphasis added). Again, Red Chamber does not even mention the June 8, 2023 letter in its briefing but appears to concede that Moon River requested the return of the equipment three months earlier by virtue of the March 7, 2023 letter received by Ming Bin. Based on Red Chamber's concession, the Court finds that it was aware that Moon River was requesting the return of the equipment in the event no alternative settlement was reached as early as March 2023. Notwithstanding this finding, the Court reiterates that Red Chamber simply omits any reference to the June 8, 2023 letter, in which Moon River explicitly demanded that Red Chamber return the equipment, but does not outright deny having received the letter. Stated differently, it does not counter Moon River's evidence that it made an express demand, through counsel, for the return of the surimi equipment on June 8, 2023, and that receipt of the demand was confirmed by its then-counsel, Morrow.

Further, Ming Bin testified that he could not recall whether Red Chamber responded to Moon River's June 8, 2023 demand letter:

> Q.   So now we're three months out from Greg's e-mail to me on June 17th saying, Hey, we got your letter. Yes, we got it, and we're going to respond. That's three months out from that when Red Chamber was served; correct?
>
> A.   Correct.
>
> Q.   So tell me, during that three-month period before Red Chamber ever knew that it was being served with a lawsuit, what it did -- what it did [sic] to respond to my letter stating return the surimi equipment or pay for the surimi equipment.
>
> A.   I don't recall. Or I need to research.

[122], Ex. 5 at p. 2.

Moon River argues that it never received any response to either the March or June 2023 letters, and Red Chamber does not dispute that contention. Having not heard back from Red Chamber, Moon River commenced this lawsuit soon after in August 2023.

In *Covington*, the Mississippi Supreme Court held that "[w]here one acquires possession of the property in a lawful manner … his refusal to relinquish possession or control over the property after a demand by plaintiff gives rise to the action [of conversion]." *Covington Cnty. Bank*, 177 So. 3d at 829. The court went on to provide the following illustration, which is guiding in this case:

> For example, a conversion claim accrues the moment a thief steals a car, because the thief has no right to possess or use the car. But where one loans a car to a friend, the friend's possession is lawful and would not give rise to a conversion claim unless, after some period of time, the friend refuses to return the car after demand. Because the friend—or, more likely, ex-friend—would be exercising possession without any right to do so, the lawful possession transforms into a conversion.

*Id*.

Here, it is undisputed that Moon River initially permitted Red Chamber to take possession of the surimi equipment. However, after demand was made in March and/or June 2023 for Red Chamber to return the equipment to Moon River, Red Chamber was no longer in lawful possession of it. Viewing this evidence in light most favorable to Moon River, a reasonable jury could find that Red Chamber's silence after receiving Moon River's demands, coupled with its continued possession of the equipment, constituted a "wrongful detention [of the equipment] after demand." *Id*. This is especially the case during the time frame between the date of the demand letters and the commencement of this lawsuit. For this reason, the Court finds irrelevant Red Chamber's contention that "since the *inception of the lawsuit*, it has been communicated that Moon River may

receive [sic] the equipment at its leisure." [110] at p. 6 (emphasis added). Having found that a question of material fact exists as to Moon River's conversion claim, Red Chamber's request for summary judgment is hereby denied.

Moreover, the Court also considers Moon River's theory that Red Chamber "defiantly resist[ed] Moon River's rights to the equipment by falsely claiming ownership and intentionally wielding control and dominion over it in defiance of Moon River's rights." [123] at p. 16. Relevant to this argument, "a conversion exists only when there is an 'intent to exercise dominion or control over goods which is inconsistent with the true owner's right.'" *Covington Cnty. Bank*, 177 So. 3d at 829 (quoting *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 69 (Miss. 2004)). It is undisputed in this case that, in the midst of the parties' attempt to settle their dispute, Moon River made known to Red Chamber that it was the lawful title owner of the surimi equipment in the March 7, 2023 letter to Ming Bin. The letter provides in pertinent part:

> To recap some of that background, it is my understanding that, initially, Red Chamber expressed an interest in acquiring *Moon River's surimi line equipment* and proposed that Moon River move the surimi equipment to one of Red Chamber's processing facilities in Argentina. Moon River, for its part, was agreeable to allowing Red Chamber to move the surimi equipment to Argentina, provided that Red Chamber compensate Moon River for the full value of its investment in the surimi equipment and provided that Red Chamber bear the expenses of the disassembly, removal, and transportation of the equipment.

[130], Ex. 4 at p. 1, 3 (emphasis added).

However, as Moon River points out, Red Chamber has claimed ownership of the surimi equipment on various occasions during the pendency of this lawsuit but does not take that position now during the summary judgment stage. For example, in response to Moon River's written discovery, Red Chamber stated that "…the facts show that Moon River knowingly and voluntarily gave up possession of the surimi line equipment to Red Chamber with the intent to relinquish any

claim of right to the equipment." [122], Ex. 11 at p. 2. At his deposition, Ming Bin initially testified that Red Chamber was given the equipment:

> Q.     Okay. And it did not have -- Red Chamber, that is, did not have any buy-sell contract for the surimi equipment, did it?
>
> A.     Because she want us to just take it.
>
> Q.     Yeah.
>
> A.     Yeah.
>
> Q.     Yeah. Just give it away.
>
> A.     Yes.

*Id.*, Ex. 4 at p. 10.

Ming Bin then denied having paid for the equipment or having any bill or sale or other documentation showing that Red Chamber owned the equipment:

> Q.     Red Chamber has never paid Moon River for any of the surimi equipment it has, has it?
>
> A.     No.
>
> Q.     Yeah. And, obviously, I know this is self-evident. Red Chamber doesn't have a bill of sale or any document showing that it owns the surimi equipment, does it?
>
> A.     No.

*Id.*

Despite those denials, Ming Bin again stated that the equipment was given to Red Chamber:

> Q.     Okay. Do you contend that Red Chamber Company or Red Chamber Argentina or Neptune or any affiliated company with Red Chamber owns the equipment that is in your company or companies' possession?
>
> A.     Well, he gave it to us.

19

Q.    He did.

A.    Yes.

Q.    Now you're saying he gave it to you.

A.    I mean, he said, "Take it." He just say "Take it." He always says that.

Q.    Okay. So you're contending that you do own it because he gave it away.

A.    Well, without the rest of it, I don't want it.

*Id.* at p. 12.

Overall, based on the above testimony and Red Chamber's written discovery responses, a reasonable jury could find that Red Chamber, in claiming that the equipment was given to it despite not having paid for the equipment or otherwise receiving title to it, intended to exercise dominion or control over the equipment under a baseless claim of ownership. That position has been maintained by Red Chamber throughout this litigation even though Ming Bin later in his deposition concedes that Red Chamber does not own the equipment. *See* [130], Ex. 3 at p. 5.[6] Viewing the evidence in light most favorable to Moon River, a jury could reach the same conclusion despite Ming Bin later recanting Red Chamber's claim of ownership.

As a final matter, the Court finds noteworthy Ming Bin's testimony regarding the circumstances under which he would return the equipment:

Q.    Well, you said you don't want it.

A.    I mean, sure I can send it back. You give me back whatever that was mine, and I'll give it to you.

---

[6] In fact, Red Chamber states in its Answer and Counterclaim [81], filed on July 3, 2025 *after* Ming Bin was deposed in January, 2025, that "Red Chamber is the owner of the surimi equipment and has the lawful right to possess the equipment." [81] at p. 2.

Q.      And there we go.

A.      Yeah.

Q.      We have your shrimp equipment; therefore you won't give us our--

A.      And my money and some other costs. We could calculate it out. It's all there.

[122], Ex. 4 at p. 13.

Based on this additional testimony, a reasonable jury could find that Red Chamber intended to exercise dominion or control over the equipment as leverage for obtaining something in return, whether that be the shrimp peelers, which are not the subject either parties' claims, or payment from Moon River, and inconsistent with Moon River's right as the owner of the surimi equipment. In sum, the Court finds that issues of material fact remain to be considered by a jury regarding Moon River's conversion claim. For the reasons the Court has explained above, Red Chamber's request for dismissal of Moon River's claim is denied.

*B. Damages*

Finally, Red Chamber requests partial summary judgment on the issue of damages in the event of a ruling in Moon River's favor on the conversion claim. Specifically, it argues that there is insufficient evidence to support Moon River's claims for lost profits and punitive damages.

In its Response Memorandum [123], Moon River withdraws its claim for lost profits. Therefore, that portion of Red Chamber's requested relief is granted. Accordingly, the Court will only address the punitive damages claim.

"Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed 'with caution and within narrow limits.'" *Buckalew v. Schneider Nat. Carriers, Inc.*, 2014 WL 4146654, at *1 (S.D. Miss. Aug. 19, 2014) (quoting *Ill. Cent. R. Co. v.*

21

*Young*, 120 So. 3d 992, 1013-14 (Miss. Ct. App. 2012)). Pursuant to Mississippi statute, punitive damages are allowable under certain circumstances only, namely:

> (a) Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

Miss. Code Ann. § 11–1–65(1)(a).

There is no dispute that punitive damages can be recovered in an action for conversion. *See Cmty. Bank*, 884 So. 2d at 777; *see also Scarborough v. Rollins*, 44 So. 3d 381, 388 (Miss. Ct. App. 2010) ("Conversion is an intentional tort; therefore, an award of punitive damages … is proper."). The parties raise competing arguments relative to whether there is sufficient evidence to support a punitive damages award in the event of a liability finding against Red Chamber. Importantly, the Court notes that "[i]n any action in which the claimant seeks an award of punitive damages, the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages." Miss. Code Ann. § 11–1–65(1)(b). Because questions of fact remain as to Moon River's conversion claim, the Court finds it appropriate to address the punitive damages issue in the context of trial, if Red Chamber is found liable for conversion, and not at this juncture. The Court defers ruling on this issue.

*Conclusion*

For the reasons set forth above, Moon River's Motion for Summary Judgment [105] is GRANTED. Red Chamber's counterclaims for breach of contract and promissory estoppel are dismissed *with prejudice*. Red Chamber's Motion for Summary Judgment [109] is GRANTED IN PART AND DENIED IN PART. To the extent Moon River sought lost profits, that damages claim is dismissed. Moon River will otherwise be permitted to proceed to trial on its conversion claim.

SO ORDERED, this the 23rd day of February, 2026.

/s/ Sharion Aycock_____
SENIOR UNITED STATES DISTRICT JUDGE